## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| DEMARIO MCCLARTY, | :: | PRISONER CIVIL RIGHTS |
| Plaintiff, | :: | 42 U.S.C. § 1983 |
| | :: | |
| v. | :: | |
| | :: | |
| LT. JACKSON; et al., | :: | CIVIL ACTION NO. |
| Defendant. | :: | 1:12-CV-2317-RWS-RGV |

## ORDER AND FINAL REPORT AND RECOMMENDATION

In this pro se civil rights action, plaintiff Demario McClarty ("plaintiff") alleges that Detention Officer Rafferty Fuqua, on Sergeant Paula Robinson's command, assaulted plaintiff because he was unable to get out of his wheelchair, that Lieutenant Debra Jackson was present during the attack but failed to intervene, and that, as a result of the attack, plaintiff's right arm was "torn open where stitches had just recently been removed" and his "left knee surgery was rendered unsuccessful."[1] [Doc. 1 at 4-5; see also Doc. 40 at 7-8, 12-13, 18-19].[2] This matter is now before the Court on the defendants' motion for summary judgment, [Doc. 40], and plaintiff's "Request to File

---

[1] Although plaintiff raised additional claims for relief, only his excessive force claims against Detention Officer Fuqua and Sergeant Robinson and his failure to protect claim against Lieutenant Jackson were allowed to proceed. See [Doc. 5 at 5-6; Doc. 10 at 2].

[2] The listed document and page numbers in citations to the record refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

Excessive Statements," [Doc. 44], and "Request to Subpoena all Medical Records from Fulton County Jail," [Doc. 45]. For the reasons that follow, plaintiff's requests, [Docs. 44-45], are **DENIED**, and **IT IS RECOMMENDED** that the defendants' motion for summary judgment, [Doc. 40], be **GRANTED**.

## I. PLAINTIFF'S REQUESTS TO FILE EXCESSIVE STATEMENTS AND TO SUBPOENA HIS MEDICAL RECORDS

In his first request, plaintiff seeks leave to file unidentified statements, but does not explain why they are needed or what information they contain. [Doc. 44]. Plaintiff's second request seeks the production of his medical records. [Doc. 45]. As previously noted by this Court, discovery must be completed within the time limitations set by the Court. See LR 26.2, NDGa. The four-month discovery period for this case ended on March 29, 2013. [Doc. 34 at 2]. Additionally, the Court's extension of the discovery period for the limited purpose of taking plaintiff's deposition expired on May 10, 2013. [Id. at 3]. Plaintiff does not explain why he failed to seek copies of his medical records before the discovery deadline expired. Accordingly, plaintiff's requests, [Docs. 44, 45], are **DENIED**.

2

## II.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**A.**    **Statement of Facts**

In compliance with Local Rule 56.1B(1), the defendants, as movants, have filed a statement of undisputed facts.  [Doc. 40-1].  Plaintiff has not filed a response as required by Local Rule 56.1B(2)a.  Accordingly, the defendants' undisputed material facts, which are supported by the record as indicated below, are deemed admitted.  See LR 56.1B(2)a(2), NDGa; Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1302-03 (11th Cir. 2009); Reese v. Herbert, 527 F.3d 1253, 1269 (11th Cir. 2008).  However, the Court "will not consider any fact . . . set out only in the brief and not in the movant's statement of undisputed facts."  LR 56.1B(1)(d), NDGa.  Additionally, the Court will not consider plaintiff's "Disputed Material Facts," [Doc. 48], because the "facts" contained therein are "not supported by a citation to evidence" and instead are "stated as an issue or legal conclusion."  LR 56.1B(1)(a),(c) and (2)b, NDGa.

While in the custody of the Fulton County Sheriff's Department, plaintiff was transported to the Grady Hospital Detention Center on July 16, 2010.  [Doc. 40-3 (Pl. Dep.) at 14-15].  Fulton County Sheriff's Department employees Detention Officer Fuqua, Sergeant Robinson, and Lieutenant Jackson were working at the Grady Hospital Detention Center on that day.  [Doc. 40 at 8, 13, 19].  Plaintiff, who was using a wheelchair, was placed in a holding cell.  [Id. at 13-14, 19-20; Doc. 40-3 at 17, 19].

3

At some point while plaintiff was in the holding cell with his wheelchair, both Detention Officer Fuqua and Sergeant Robinson were present in the holding cell. [Doc. 40 at 13-14, 19-20; Doc. 40-3 at 19]. Plaintiff was removed from his wheelchair after stating that he could not remove himself from the chair. [Doc. 40 at 14-15, 20; Doc. 40-3 at 18-19, 40-41].

The parties dispute how plaintiff was removed from his wheelchair and the amount or degree of force used to do so. According to Detention Officer Fuqua and Sergeant Robinson, who were both present in the holding cell when this occurred, Detention Officer Fuqua and another officer simply helped plaintiff remove himself from his wheelchair in order for him to be seated on the bench in the holding cell. [Doc. 40 at 14-15, 20-21]. However, plaintiff contends that Detention Officer Fuqua "snatched him up" from his wheelchair, "pushed" him down, "slammed" him on the bench, and "slammed" his head against the wall after he tried to push the officer's hand away. [Doc. 40-3 at 19-21, 38-40, 42-43, 46, 51-52]. It is undisputed that as plaintiff was being removed from his wheelchair, he used force against Detention Officer Fuqua by swinging his arms and fists. [Doc. 40 at 14, 20; Doc. 40-3 at 19-20, 37-38, 43]. Plaintiff was not handcuffed when he came into physical contact with Detention Officer Fuqua in the holding cell. [Doc. 40-3 at 40-41]. Lieutenant Jackson was not present in the holding cell when these events occurred. [Doc. 40 at 8; Doc. 40-3 at 28,

30, 50-51].  Rather, Lieutenant Jackson was in her office.  [Id.].  Although Detention

Officer Fuqua had some physical contact with plaintiff, neither Sergeant Robinson nor

Lieutenant Jackson did.  [Doc. 40 at 9, 14-15, 20; Doc. 40-3 at 19, 48].

**B.**     **Summary Judgment Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the initial

burden of demonstrating that no genuine dispute as to any material fact exists.  Celotex

Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party's burden may be

discharged by "'showing' – that is, pointing out to the district court – that there is an

absence of evidence to support [an essential element of] the nonmoving party's case."

Id. at 325.  In determining whether the moving party has met this burden, the district

court must "view the evidence and all factual inferences . . . in the light most favorable

to the party opposing the motion."  Burton v. City of Belle Glade, 178 F.3d 1175, 1187

(11th Cir. 1999) (citation omitted).

Once the moving party has adequately supported its motion, the nonmovant then

has the burden of showing that summary judgment is improper by coming forward

with specific facts showing a genuine dispute.  Matsushita Elec. Indus. Co. v. Zenith

Radio Corp., 475 U.S. 574, 587 (1986).  The nonmovant may not rest upon mere

allegations or denials contained in his pleadings.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).  Additionally, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position" is insufficient to defeat summary judgment. <u>Id.</u> at 252.  Rather, the court must determine "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict."  <u>Id.</u>

**C.**   **<u>Analysis</u>**

The defendants argue that, even accepting plaintiff's version of the facts as true, Detention Officer Fuqua's actions in "snatching" plaintiff out of his wheelchair and slamming him down on a bench did not amount to excessive force and that Detention Officer Fuqua and Sergeant Robinson had a legitimate reason for removing plaintiff from his wheelchair because plaintiff would not remove himself and he could not have the wheelchair in the cell.  [Doc. 40-2 at 7-9].[3]  The defendants further maintain that slamming plaintiff's head against the wall in a manner that caused him no injury also was not excessive force where plaintiff was not handcuffed and was trying to push Detention Officer Fuqua's hands away.  [<u>Id.</u> at 10-11].  The defendants conclude that

---

[3] Plaintiff testified that he had been "taught how to get in and out of the wheelchair on [his] own," [Doc. 40-3 at 17], but he did remove himself from the wheelchair when directed to do so by the officers. [<u>Id.</u> at 19].

6

because plaintiff has not shown that Detention Officer Fuqua's use of force was excessive, his claims against all three defendants fail. [Id. at 11].[4]

Plaintiff responds, in pertinent part, that Detention Officer Fuqua and Sergeant Robinson acted to punish him "for not performing their command" to get out of the wheelchair and that, as a result, the "flesh of [his] right arm [was] torn where stitches had recently been removed" and his prior knee surgery was rendered "useless," requiring a second surgery. [Doc. 47 at 3].[5]  The defendants reply that there are no material facts in dispute ant that plaintiff has not established all of the elements of his claims. [Doc. 49].

The Due Process Clause "protects a pretrial detainee from the use of excessive force that amounts to punishment." Graham v. Connor, 490 U.S. 386, 395 n.10 (1989). "[W]hether or not a prison guard's application of force is actionable turns on whether that force was applied in a good faith effort to maintain or restore discipline or maliciously or sadistically for the very purpose of causing harm." Bozeman v. Orum,

---

[4] The defendants also argue that plaintiff has not established a medical deliberate indifference claim. [Doc. 40-2 at 12-14].  However, no such claim was allowed to proceed in this action. See [Docs. 5, 10].  Thus, the Court will not address this argument or the defendants' conclusory assertion made in a single sentence and in a footnote that they are entitled to qualified immunity, [Doc. 40-2 at 11-12 & n.20].

[5] Plaintiff suffered his original injuries in a "shootout" during which he was one of several individuals injured. [Doc. 40-3 at 12].

422 F.3d 1265, 1271 (11th Cir. 2005) (per curiam) (citation omitted).  Factors to be

considered in this inquiry are:

> a) the need for the application of force; b) the relationship between the
> need and the amount of force that was used; c) the extent of the injury
> inflicted upon the prisoner; d) the extent of the threat to the safety of staff
> and inmates; and e) any efforts made to temper the severity of a forceful
> response.

Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009) (per curiam).

Notably, "not . . . every malevolent touch by a prison guard gives rise to a

federal cause of action." Hudson v. McMillian, 503 U.S. 1, 9 (1992).  Rather, the use

of force must be "gratuitous or disproportionate" and must have "no object but to

inflict pain." Skritch v. Thornton, 280 F.3d 1295, 1304 (11th Cir. 2002).  "It is

obduracy and wantonness, not inadvertence or error in good faith, that characterize the

conduct prohibited by the Cruel and Unusual Punishments Clause . . .." Whitley v.

Albers, 475 U.S. 312, 319 (1986).  "The infliction of pain in the course of a prison

security measure, therefore, does not amount to cruel and unusual punishment simply

because it may appear in retrospect that the degree of force authorized or applied for

security purposes was unreasonable, and hence unnecessary in the strict sense." Id.

Plaintiff's contention, which must be accepted as true on summary judgment,

that Detention Officer Fuqua snatched plaintiff out of his wheelchair does not amount

to excessive force.  Plaintiff maintains that he could not remove himself from the

8

wheelchair, and, thus, some force was necessary to move him from the wheelchair to the bench in the cell.  Plaintiff does not allege that he sustained any injury when Detention Officer Fuqua snatched him up from the wheelchair.  At best, this action was equivalent to "a malevolent shove," which does not rise to a constitutional violation. See Carson v. Mulvihill, 488 F. App'x 554, 562 (3d Cir. 2012) (holding that prison guard's attempt to force plaintiff into his cell by pushing plaintiff's wheelchair rapidly and harshly through his cell door, which caused him to fall sharply onto his bed, did not violate plaintiff's constitutional rights).

It is undisputed that plaintiff used force against Detention Officer Fuqua as plaintiff was being removed from his wheelchair.  [Doc. 40 at 14, 20; Doc. 40-3 at 19-20, 37-38, 43].  Plaintiff admits that, after Detention Officer Fuqua lifted plaintiff from the wheelchair to place him on the bench, plaintiff swung his arms and fists at the officer.  [Doc. 40-3 at 19-20, 37-38, 43].  Accordingly, Detention Officer Fuqua was justified in using force to control plaintiff and prevent injury to himself, and slamming plaintiff down on the bench was not excessive under these circumstances.  See Whitley, 475 U.S. at 319; Skritch, 280 F.3d at 1304.  Moreover, plaintiff's alleged injuries, i.e., reopening an incision where stitches recently had been removed and a second knee surgery, are not supported by any medical evidence.  See Vicks v. Knight, 380 F. App'x 847, 852 (11th Cir. 2010) (per curiam) (affirming grant of summary

9

judgment to defendant where plaintiff did "not point to the existence of any medical evidence showing that he sustained an injury as a result of the alleged beating," and thus, a reasonable factfinder could not reasonably infer that defendant used "more than a *de minimus* amount of force against [plaintiff]").

Once plaintiff was on the bench, he continued to resist and "tried to push [the officer's] hand off [him]." [Doc. 40-3 at 19]. Therefore, Detention Officer Fugua's actions in pushing plaintiff's head against the wall during this altercation with plaintiff, which did not result in any further injury to plaintiff, also was not excessive force. Vicks, 380 F. App'x at 852. In short, the undisputed facts show that Detention Officer Fuqua's use of force in this case, even if it may be regarded as unreasonable in retrospect, was not gratuitous, disproportionate, or inflicted solely to cause plaintiff pain. See Carson, 488 F. App'x at 562; Vicks, 380 F. App'x at 852; Wilson v. Adams, No. 09-00552-CG-N, 2011 WL 720195, at *6-7 (S.D. Ala. Feb. 3, 2011) (recommending granting summary judgment to defendants who used "substantial," but not "excessive," force against plaintiff in response to his "persistent, belligerent, erratic, and violent behavior"), report and recommendation adopted by, 2011 WL 717244, at *1 (Feb. 22, 2011); Adams v. Mosley, No. 2:06-CV-873-ID, 2008 WL 5101985, at *2-3 (M.D. Ala. Dec. 1, 2008) (granting summary judgment to correctional officer on excessive force claim where officer grasped prisoner and took

10

him to the ground after prisoner failed to follow instruction to sit in a wheelchair for transportation to the healthcare unit).

Because Detention Officer Fuqua's use of force was not excessive, Lieutenant Jackson is not liable for failing to intervene.  See Crenshaw v. Lister, 556 F.3d 1283, 1294 (11th Cir. 2009) (per curiam) (holding that where officer's use of force is not excessive, other officer who was present at the scene had no obligation to intervene). Similarly, Sergeant Robinson is not liable for ordering the use of force.  See Long v. Slaton, 508 F.3d 576, 583 n.10 (11th Cir. 2007) ("Because Plaintiffs have failed to state a claim for the violation of a constitutional right, Plaintiffs' supervisory claims . . . also fail."); Cunningham v. Culliver, No. 10-00114-CG-M, 2011 WL 6092431, at *19 (S.D. Ala. Nov. 14, 2011) ("Having found that Plaintiff's allegations of excessive force . . . fail to establish a constitutional violation, Plaintiff's supervisory claims . . . based on those alleged acts of excessive force fail as a matter of law."), report and recommendation adopted by, 2011 WL 6098784, at *1 (Dec. 6, 2011).  Accordingly, the defendants' motion for summary judgment is due to be granted.[6]

---

[6] Even if Detention Officer Fuqua were found to have used excessive force, both Sergeant Robinson and Lieutenant Jackson would still be entitled to summary judgment.  As noted above, some force was necessary to remove plaintiff from his wheelchair because he could not do so himself.  Thus, Sergeant Robinson's order that plaintiff be removed from his wheelchair so that he could be placed in the cell was "reasonable under the circumstances."  See Cunningham, 2011 WL 6092431, at *19

11

## III.  CONCLUSION

For the foregoing reasons, plaintiff's "Request to File Excessive Statements," [Doc. 44], and "Request to Subpoena all Medical Records from Fulton County Jail," [Doc. 45], are **DENIED**, and **IT IS RECOMMENDED** that the defendants' motion for summary judgment, [Doc. 40], be **GRANTED**.

The Clerk is **DIRECTED** to terminate the referral to the Magistrate Judge.

**SO ORDERED AND RECOMMENDED**, this 7th day of November, 2013.

*Russell G. Vineyard*
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

---

(finding that Warden was entitled to summary judgment where he ordered that plaintiff be extracted from his cell "after it was reported to him that Plaintiff adamantly refused to leave his cell").  Additionally, Lieutenant Jackson cannot be held liable for failing to intervene because she "had no reason to expect the use of excessive force until after it had occurred, [s]he had no reasonable opportunity to protect [plaintiff], and the obligation to take steps to protect him never arose."  Riley v. Newton, 94 F.3d 632, 635 (11th Cir 1996); see also O'Neill v. Krzeminski, 839 F.2d 9, 10-12 (2d Cir. 1988) (finding that officer had no opportunity or obligation to intervene to prevent three blows in rapid succession to plaintiff's face and head).

AO 72A
(Rev.8/82)